# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

| | |
|---|---|
| In re:<br><br>7Q59 AMHERST, LLC,<br><br>Debtor | Chapter 11<br>Case No. 25-30150-EDK |
| 7Q59 AMHERST, LLC,<br><br>Plaintiff.<br><br>v.<br><br>GREENFIELD COOPERATIVE BANK,<br><br>Defendant. | Adversary Proceeding<br>No. 25-3002 |

## MEMORANDUM OF DECISION

Before the Court is a motion for summary judgment [Dkt. No. 24] (the "Summary Judgment Motion") filed by Greenfield Cooperative Bank, the defendant in this adversary proceeding ("Greenfield"), requesting the Court to enter judgment in its favor on the Verified Complaint filed by 7Q59 Amherst, LLC, the Debtor in the underlying Chapter 11 bankruptcy case (the "Debtor"), and to enter judgment in its favor on Greenfield's counterclaims against the Debtor.

## I. FACTS AND TRAVEL OF THE CASE

The following recitation of facts are drawn from the Verified Complaint [Dkt. No. 1], the

Defendant's Statement of Undisputed Material Facts [Dkt. No. 25], the documents provided in the Summary Judgment Appendix [Dkt. No. 33], the Defendant's Memorandum of Law in Support of its Motion for Summary Judgment [Dkt. No. 26], and the Opposition to Motion for Summary Judgment [Dkt. No. 31].

Prior to 2021, the Debtor owned a 12-unit apartment building located at 1-23 Eastern Avenue, Northampton, Massachusetts (the "Northampton Property") and a single-family rental property located at 11 South Whitney Street, Amherst, Massachusetts (together, the "Properties"). On April 7, 2021, the Debtor granted a first priority mortgage on the Properties (the "Mortgage") in favor of Greenfield to secure repayment of a $1,650,000 promissory note (the "Note"). Approximately six months later, the Debtor executed a second promissory note for $200,000, secured by a second mortgage on the Northampton Property.[1] The principal of the Debtor (the "Principal") guaranteed the notes (the "Guaranties").

Under the Note, "event[s] of default" included the following:

> **Payment Default**. Borrower fails to make any payment when due under this Note.
>
> **Other Defaults**. Borrower fails to comply with or perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.
>
> . . .
>
> **Death or Insolvency**. The dissolution of the Borrower . . . or any other termination of Borrower's existence as a going business . . ., the insolvency of Borrower, . . . or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.
>
> . . .
>
> **Adverse Change**. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note

[1] Although the Verified Complaint describes and defines the "Second Promissory Note" and "Second Mortgage," the relief requested in all counts refers only to the first Note and the Mortgage.

> is impaired.

Dkt. No. 33-2, p. 5. The Note also provided that if a default, other than a default in payment,

> is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practicable.

*Id.* Pursuant to the Note, upon default, the interest rate under the Note "shall be increased by adding an additional 5.000 percentage point margin," and "Lender may declare the entire unpaid principal balance . . . and all accrued unpaid interest immediately due . . . ." *Id.*

The Mortgage set forth similar events of default, including:

> **Payment Default.** Grantor fails to make any payment when due under the Indebtedness.
>
> **Default on other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect a discharge of any lien.
>
> **Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.
>
> . . .
>
> **Death or Insolvency.** The dissolution of Grantor's [sic] . . ., or any other termination of Grantor's existence as a going business . . ., the insolvency of Grantor, . . . or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.
>
> . . .
>
> **Adverse Change**. A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the indebtedness is impaired.

Dkt. No. 33-3, pp. 30-31. The Mortgage also contained a Right to Cure Provision identical to the Cure Provision contained within the Note, and contained a provision that, should an event of default occur, Greenfield "shall have the right at its option without notice to Grantor to declare the entire [i]ndebtedness immediately due and payable . . . ." Dkt. No. 33-3, p. 31.

About a year and a half after the Note and the Mortgage were executed, in November 2022, the Debtor transferred the Properties to other entities owned by the Principal for nominal consideration. The Debtor did not receive any documents from Greenfield consenting to or approving the transfers.[2] On June 29, 2023, after communications with a loan officer for Greenfield, the Principal sent an email to the loan officer that said, "[p]er our phone conversation, we will fix this [referring to the transfers of the real estate out of the Debtor] in the first week of July. I am thinking the best way to fix this is to have Robert Spencer make the correction, as Bob has a clear picture of the whole thing." Dkt. No. 33-3, p. 51.

Approximately 6 months later, on December 29, 2023, the Debtor was dissolved by the Massachusetts Secretary of State.

On June 17, 2024, the same Greenfield loan officer sent the Principal an email notifying her that the Debtor was in arrears on the real estate taxes on the Northampton Property in the amount of $29,981.02 for fiscal year 2024. The loan officer also expressed Greenfield's concern regarding a writ of attachment in the amount of $117,404.58 that was recorded against the Properties. The email additionally informed the Debtor that utility bills in the amount of $5,201.96

[2] At the time of the transfer, certain tenants at the Northampton Property had obtained a money judgment against the Debtor. When asked if the tenants' lawsuit was the impetus for the transfer, the Principal denied that that was the reason for the transfer, maintaining that the Properties were transferred because Jampa, a person affiliated with the transferee, was needed to help fix the Northampton Property and Jampa wanted his name on the Property. Jampa was going to be given "like a percent, only after he fix it." Dkt. No. 33-1, p. 31.

were due.[3] The email also stated that "[t]he bank needs some definite dates for resolution as you continue to be in default of the loan agreements/documents due [to] the transfer of the deeds." Dkt. No. 33-3, p. 59.

The next day, June 18, 2024,[4] the loan officer and Kevin Bowler, a Greenfield loan resolution officer, met with the Principal and, according to the loan officer in a memo from the following day, at that meeting Bowler "provided Ms. Dole with two options: 1) Transfer back the properties to 7Q59 Amherst, LLC, bring taxes and utilities current for 2024, resolve outstanding litigation issues with an attorney; 2) Refinance the two loans with another Bank. Kevin [Bowler] provided a timeline of 30 days." Dkt. No. 33-3 p. 60. Although not in the memo from the loan officer, the Statement of Undisputed Material Facts claimed that the Principal was also informed that the notes and Guaranties were in default in June 2024 because the Debtor had been dissolved by the Secretary of State. Statement of Undisputed Material Facts, ¶ 60.

In the record is a two-page notice of default letter on Greenfield's letterhead dated June 25, 2024 (the "Default Letter") addressed to the Debtor at P.O. Box 3174, Amherst, MA 01004-3174. Dkt. No. 33-2, pp. 7-8. Kevin Bowler is identified as the signatory, but it appears that someone else signed it on Bowler's behalf. The Default Letter also indicates that a copy was sent to the Principal's residential address, which address the Principal provided to Greenfield on a customer address change form in 2021.

A month later, on July 25, 2024, Greenfield sent a demand letter to the Principal as

---

[3] Greenfield mistakenly recited that the Debtor was in arrears in *principal and interest* in the amount of $5,201.96, *see* Statement of Undisputed Material Facts, ¶ 25, but counsel for Greenfield agreed at the hearing on the Summary Judgment Motion that that statement was in error.

[4] Greenfield reports the date of the meeting as June 16, 2024, *see* Statement of Undisputed Material Facts, ¶ 60, but the officer memo from June 19, 2024, *see* Dkt. No. 33-3, p. 59, states that the meeting took place on June 18, 2024.

guarantor, notifying her that the events of default were not cured as required in the Default Letter. In the record is a similar letter, also dated July 25, 2024, addressed to the Debtor at P.O. Box 3174, Amherst, MA 01004-3174. In both letters, Greenfield declared all liabilities to be immediately due and payable, demanding payment of the total obligation. At that time, the asserted amount owed was $1,712,731.57 in principal and $3,674.87 in interest.[5] The demand letters also advised that Greenfield was "instituting the Default Rate of Interest set forth in the Notes." Dkt. No. 33-2, pp. 9-12.

On August 29, 2024, the Principal met with Bowler at the bank and "asked about the default notices sent by the Bank, while at the same time claiming she never received the notices . . . ." Statement of Undisputed Material Facts, ¶ 63. Bowler handed the Principal a copy of the first page of the Default Letter(which copy was not printed on Greenfield's letterhead) and signed it. The first page of the Default Letter indicated that it related to loans ending 4201 and 0040 and provided:

> Please be advised that an Events [sic] of Default has occurred under the Note, Mortgage and other loan documents including but not limited to:
>
> - Transfer of the property without the Banks [sic] consent.
> - Dissolution of 7Q59 Amherst LLC by the Secretary of State.
> - Entry of Judgment against 7Q59 Amherst LLC
> - Unpaid municipal charges
>
> Per the terms of the Notes and our conversation on June 18, 2024, you have until July 18, 2024 to resolve these Defaults.

Dkt. No. 33-2, p. 7.

According to the Verified Complaint, Greenfield scheduled foreclosure sales for the Properties on March 26, 2025. Those sales were stayed, however, due to the Debtor's filing of a

[5] It is unclear whether this is the amount due on one of the notes or both.

voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code")[6] on March 17, 2025. Contemporaneous with the filing of the underlying bankruptcy case, the Debtor also commenced this adversary proceeding by filing the Verified Complaint. After a hearing on the Summary Judgment Motion, the Court took the matter under advisement.

## II. POSITIONS OF THE PARTIES

### A. Verified Complaint

In Count I of the Debtor's Verified Complaint, the Debtor alleges that Greenfield breached its contractual obligations to the Debtor by failing to provide an appropriate notice of default, calling the Note in default, charging a default rate of interest, improperly charging late fees, failing to accept monthly payments, miscalculating and charging an incorrect default interest rate, and initiating foreclosure. And in Count II, the Debtor alleges a breach of the "obligation of good faith" based on the same facts in Count I.[7]

In Count III, the Debtor again alleges a breach of contract, specifically based on Greenfield's alleged failure to provide proper notice of default because the copy of the Default Letter provided to the Principal in August was not on Greenfield's letterhead and because the alleged defaults were not valid. As to the alleged defaults, the Debtor claims that "the 'transfer of the property' (which was not identified), was with the permission and consent of [Greenfield], (ii) the 'dissolution' [of the Debtor] was without effect or cause for notice, (iii) the 'Entry of Judgement [sic]' was not just cause for a default and (iv) there were no unpaid municipal charges owed as of the date of the delivery." Dkt. No. 1, p. 7. The Court presumes that the date of delivery

---

[6] *See* 11 U.S.C. §§ 101 *et seq.*

[7] While the Debtor titles Count II as a "breach of obligation of good faith," Count II more precisely refers to the breach of the obligation of good faith and fair dealing.

referred to by the Debtor is August 2024.

In Count IV (mislabeled as Count VI), the Debtor alleges a violation of Massachusetts General Laws Chapter 93A (the Massachusetts Consumer Protection Act; "Chapter 93A") based on the same facts recited in the previous counts. And the Debtor says that Greenfield's advertisements, which contain positive statements about serving the community and helping customers realize their dreams, are not consistent with Greenfield's handling of the Debtor's loans. According to the Debtor, this contrast supports the Debtor's argument that Greenfield engaged in unfair methods of competition and/or unfair and deceptive acts and/or practices under Chapter 93A.

In Count V, the Debtor seeks punitive damages for purported violations of unspecified provisions of the Bankruptcy Code.

Lastly, in Count VI, the Debtor requests preliminary and permanent injunctive relief to stay the foreclosure of a different property owned by a separate, non-debtor entity. The Court denied the request for a preliminary injunction at the inception of this adversary proceeding.

On account of these allegations, the Debtor requests the Court to discharge and void the Note and the Mortgage and to award damages. Alternatively, the Debtor says that the Court should adjust the interest rate to 4%, deny Greenfield's legal fees and costs, and award damages. With regard to Count IV, in addition to a request to void the Mortgage and award damages, the Debtor requests interest, costs, attorneys' fees, and treble damages. And, as discussed above, the Debtor requests through Count V that the Court award punitive damages.

**B. The Summary Judgment Motion**

In the Summary Judgment Motion, Greenfield first asserts that since the Note is a negotiable instrument under the Uniform Commercial Code, *see* Mass. Gen. Laws ("M.G.L.") ch.

106, § 3-101, *et. seq.*, Greenfield, as the holder of the Note, possesses a cause of action to enforce the Note. Greenfield also references M.G.L. ch. 106, § 3-307, which describes a cause of action for breach of a fiduciary duty. The Court understands Greenfield's argument to be that the provisions of the Uniform Commercial Code do not include claims for breach of contract and, therefore, the Debtor's claims for breach of contract are not available as affirmative causes of action for the Debtor. According to Greenfield, the Debtor would only possess defenses or offsets to the amounts allegedly owed.

Greenfield further says that the "Debtor's assertion that it did not default under the Notes is wrong as a matter of law." Dkt. No. 26, p. 3. Greenfield maintains that the Debtor was in default by reason of the transfer of all of its real estate to other entities for less than fair consideration, failure to timely pay real estate taxes, the dissolution of the Debtor by the Secretary of State, the attachment of the Debtor's real estate, the entry of the judgment against the Debtor in a lawsuit by its tenants, a lawsuit against the Principal by a former business partner, and the Debtor's failure to make payments of principal and interest under the Note. Greenfield also emphasizes that, pursuant to the Note, a default with regard to "any other agreement" between Greenfield and the Debtor constitutes a default under the Note. Greenfield contends that the Mortgage constitutes such "other agreement," and that Debtor defaulted under the terms of the Mortgage as well.

Regarding the charging of the default rate of interest, Greenfield says that because the Note specifically authorizes Greenfield to charge an increased rate of interest upon default, Greenfield was entitled to charge the default interest due to the Debtor's default.

As to the alleged improper late fees and failure to accept payments, Greenfield states that the Debtor proffered no evidence that Greenfield refused to accept any monthly payment.

Greenfield also notes that the Default Letter was not based on the failure to make a monthly payment. Nevertheless, Greenfield says, it would have been entitled to refuse a partial or monthly payment after the default, as the full amount owing under the Note was due at that point.

Insisting that it did not breach the covenant of good faith and fair dealing, Greenfield claims that the Debtor has failed to produce evidence of any dishonesty as required and that the Debtor's assertion that it was not in default is unsupportable. In rebuttal to the Debtor's claim that the loan officer sanctioned the transfers of the Properties after the transfers were completed, Greenfield points to clauses in the Note and the Mortgage that required any modifications to the loan documents to be in writing and supported by consideration, which did not happen here. According to Greenfield, it acted only to enforce the commercial loan documents, and ultimately, it was the Debtor, not Greenfield, that breached the implied covenant of good faith and fair dealing.

Greenfield also maintains that its notices of default were not defective. As to the argument that the notices failed to identify Greenfield as the sender, Greenfield says that the notices were sent on Greenfield's letterhead. Furthermore, Greenfield asserts that they were sent to the addresses provided by the Debtor, which addresses were on record with the Secretary of State. Greenfield notes that the only notice not on Greenfield's letterhead was the copy of the prior Default Letter that was given to the Principal in hand at the bank. Thus, Greenfield asserts that it did not breach any specific term or obligation under any of the loan documents.

Greenfield further contends that the Chapter 93A claim fails for the same reasons the other counts fail. Additionally, as to the Debtor's arguments regarding representations on the bank's website, Greenfield argues that its website is completely separate from the loan documents and Greenfield's efforts to enforce those documents. Greenfield also relies on the parole evidence rule, which prohibits the admissibility of evidence of a representation, statement, or agreement

made prior to or contemporaneous with a written agreement that varies the terms of the unambiguous written agreement. According to Greenfield, the Debtor is prohibited from using the statements or representations on its website as evidence to support its allegation that Greenfield had obligations to the Debtor that were not contained in or that differed from the integrated loan documents. Furthermore, Greenfield notes, the Debtor has not alleged that it actually relied on any representations on the website in entering into the loans.

With regard to the request for punitive damages in Count V, Greenfield says that, to the extent the Bankruptcy Code permits punitive damages under certain circumstances, the Court's authority to award such damages would only apply to post-petition conduct, and here, all the alleged acts occurred prepetition.

Finally, Greenfield asserts that the Debtor has not incurred or alleged any recoverable damages on any count in the Verified Complaint, and that the $25,000 requested is an arbitrary amount.

In its answer to the Verified Complaint, Greenfield asserted three counterclaims. Through the first and second counterclaims (labeled as Counts I and II), Greenfield seeks to "enforce" both promissory notes. In the Summary Judgment Motion, Greenfield contends that all of its earlier arguments are sufficient to establish the legal basis for the Debtor's liability under the notes.

In the third counterclaim (Count III), Greenfield requests the Court to find that the Debtor's transfer of another property previously owned by the Debtor – 41 Walnut Street, Northampton, Massachusetts – to 41 Walnut Noho LLC for one dollar was a fraudulent transfer.

**C. The Debtor's Opposition**

In opposition to summary judgment entering in favor of Greenfield, the Debtor claims that the Debtor never received the Default Letter. While not stated directly, the Court assumes the

Debtor to mean that not only the Debtor, but also the Principal, did not receive the Default Letter that Greenfield claims it sent. The Debtor also states that Greenfield has failed to provide proof of delivery. As a result, the Debtor maintains that the Default Letter has no effect.

With regard to the copy of the Default Letter provided in hand in August 2024, the Debtor argues that such notice was deficient due to the lack of a letterhead, the lack of Greenfield's name, and the fact that the second page of the letter was not included. The Debtor also claims that, at the time of the August 2024 meeting, the real estate taxes were current, and, therefore, the asserted default for unpaid municipal charges was not correct.

In defense of the other alleged defaults, the Debtor claims that the dissolution of the Debtor by the Secretary of State was reversed, that most of the property transfers were reversed, that the property transfers that were not reversed do not affect the Mortgage at issue, and that the tenant issues should not have been deemed a default because tenant actions are so common that no mortgagee can expect a borrower to avoid such actions.

And, finally, the Debtor relies on *Varano v. PDJM Land Tr., LLC*, 230 N.E.3d 1060 (Mass. App. Ct. 2024) (Table), in support of its argument that the alleged defaults did not deprive Greenfield of the benefit of its bargain. Accordingly, the Debtor says, the defaults were not material, as there was no effect on Greenfield's financial position. The Debtor argues that if defaults were truly material, Greenfield would have acted more promptly at the time it learned of the defaults.

## III. <u>DISCUSSION</u>

Pursuant to Federal Rule of Civil Procedure ("Federal Rule") 56, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment as to a particular claim or defense should be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As an initial matter, the Court rejects Greenfield's argument that the Debtor's breach of contract claims are unavailable to the Debtor because the Note is a negotiable instrument. The applicable provisions of the Uniform Commercial Code, codified at M.G.L. ch. 106, §§ 3-101, *et. seq.*, describe the prima facie validity of and the ability to enforce a negotiable instrument. If the Debtor were disputing the existence of the Note or disputing that the Debtor signed the Note, the provisions of the Uniform Commercial Code would have applied. Here, however, the Debtor is alleging that Greenfield breached the terms of the Note and the Mortgage. Even though the Note is a negotiable instrument, that fact does not mean a cause of action for common law breach of contract under that agreement is not available, and the cases cited by Greenfield stand for no such proposition.

Turning to the substantive arguments regarding the Counts of the Verified Complaint, resolution of the Summary Judgment Motion requires the Court to determine whether the Debtor defaulted under the terms of the Note and the Mortgage and, if so, whether Greenfield provided appropriate notice of default before it accelerated the Note and instituted the default rate of interest.

The Court agrees with Greenfield that the Debtor was in default under the terms of the Note and the Mortgage as of the end of June 2024. The Debtor's reliance on *Varano*, 230 N.E.3d 1060 (Table), wherein the court, in a nonprecedential summary decision, affirmed the lower court's ruling that alleged breaches of a commercial lease were not material, is misplaced. First, the Court notes that *Varano* is factually distinguishable, as that case involved the materiality of alleged breaches of a lease and did not address the materiality of alleged breaches of a promissory note and mortgage. And to the extent that the Debtor relies on *Varano* in support of a request for

an equitable remedy, this Court disagrees with the Debtor that the events of default here were so immaterial, trivial, or insignificant as to warrant a judgment preventing Greenfield from enforcement of the default provisions of the parties' agreements.

The first basis for default set forth in the Default Letter was the "[t]ransfer of the property without the Bank[']s consent." Dkt. No. 33-2, p. 7. It is undisputed that the Debtor transferred the Properties without Greenfield's prior written consent. Greenfield argued that the "due on sale" clause in the mortgages was sufficient, without notice, for [Greenfield] to demand immediate payment of all amounts due." Dkt. No. 26, p. 7. The due on sale clause only appears in the second mortgage, not the first Mortgage, and while it permits acceleration of the second note, the due on sale clause, standing alone, does establish the existence of default. Instead, pursuant to the terms of the Mortgage, an "Event of Default" under the Mortgage "mean[s] any of the events of default *set forth . . . in the events of default section*." Dkt. No. 33-3, pp. 35 (emphasis added). However, a transfer of Greenfield's collateral out of the Debtor's possession constituted an adverse change in the Debtor's financial condition, triggering the "Adverse Change" provisions of both the Note and the Mortgage. That the bank acquiesced to the Debtor's delay in remedying the transfer of the Properties for at least a year does not change the fact that the Debtor was, indeed, in default on that basis alone.

The Debtor also defaulted under the Note and the Mortgage upon dissolution of the Debtor by the Secretary of State pursuant to the "Death or Insolvency" provisions. The entry of judgment in favor of the tenants and against the Debtor also triggered the "Adverse Change" provision of the Note and the Mortgage. Fourth and finally, although it was not clear whether Greenfield was specifically referring to unpaid real estate taxes, utility bills, or both, it is not disputed that the Debtor was delinquent on the payment of real estate taxes at the time the Default Letter was

drafted. That delinquency triggered the "Default on Other Payments" provision in the Mortgage, which in turn triggered the "Other Defaults" provision in the Note.

However, at this juncture, a genuine issue of material fact remains, as the record provided to the Court does not establish that Greenfield provided an appropriate notice of default. The Note and the Mortgage contain identical provisions providing the Debtor with a right to cure defaults (the "Right to Cure" provision in the Mortgage and the "Cure Provisions" in the Note). Pursuant to those provisions, Greenfield was required to send written notice to the Debtor demanding cure of the defaults, triggering a 15-day period within which the Debtor would be permitted to cure. Although the Note and the Mortgage do not explain the effect of curing an Event of Default, presumably, if Greenfield had accelerated the loan, Greenfield would revert the loan back to good standing with the non-default rate of interest upon cure of the default.

The Principal's oral promises to cure did not relieve Greenfield of the requirement to send written notice demanding cure of the default pursuant to the terms of the Note and the Mortgage. And the June 17, 2024 email could not constitute the requisite notice of default, as that email did not demand that the Debtor cure the defaults. Instead, it stated only that "[t]he bank needs some definite dates for resolution as you continue to be in default of the loan agreements/documents due [to] the transfer of the deeds." Dkt. No. 33-3, p. 59. Likewise, the oral notice of default provided at the meeting on June 18, 2024 did not satisfy the bank's obligation to provide written notice to the Debtor.

While a copy of the Default Letter is in the record, Greenfield's Statement of Undisputed Material Facts is silent as to whether the Default Letter was actually mailed to the Debtor, and the other materials in the record do not establish that fact either. Federal Rule 56 permits a party to support factual assertions by "citing to particular parts of materials in the record." Fed. R. Civ. P.

56(c)(1)(A). In its brief in support of summary judgment, Greenfield states only that "[t]he notices of default, appearing in the Appendix as deposition exhibits, provided the Debtor with the required notice of its defaults." Dkt. No. 26, p. 6. Greenfield did not assert that the Default Letter was mailed to the Debtor and Greenfield did not cite to anything in the record to establish that the Default Letter was mailed.

On the first page of the Default Letter is the notation "CERTIFIED MAIL NO. [blank] RETURN RECEIPT REQUESTED." Dkt. No. 33-2, p. 7. No certified mail number is listed on the document and no return receipts from the post office were provided to the Court as evidence of the mailing. To the extent that Greenfield attempts to rely on the first page of the Default Letter that was provided in hand to the Debtor in August 2024, that notice was not sufficient, because it did not provide 15 days for the Debtor to cure. It provided: "you have until July 18, 2024 to resolve these Defaults." *Id.* at p. 15. However, that date had already passed when the letter was handed to the Principal.

Because the Debtor relies on the lack of appropriate notice of default in seeking relief under Counts I-IV, and because the question of appropriate notice remains a genuine issue of material fact, the Court must deny summary judgment as to those counts.

Greenfield also raised an argument that "[i]n the interim, and prior to the initiation of foreclosure, the Debtor admitted in its deposition that it went into payment default, for which no notice was required prior to declaring all amounts immediately due and payable." Dkt. No. 26, p. 7. Greenfield's counsel confirmed at the hearing on the Summary Judgment Motion that the Debtor was not in default on payments of principal and interest in June 2024. It can fairly be inferred that any payment default occurred after Greenfield declared all amounts immediately due and payable, and that necessarily occurred after the deadline to cure the defaults had passed, of

which deadline the Debtor claims to not have had notice. Therefore, the allegations regarding any payment default do not resolve the notice and ability to cure issues presented in the Verified Complaint.

With regard to Count V, which seeks punitive damages pursuant to the Court's authority under 11 U.S.C. § 105(a) based on alleged violations of unspecified provisions of the Bankruptcy Code, the Court agrees with Greenfield that the Debtor relies on prepetition actions to support its claim and does not allege any violations of the Bankruptcy Code. Accordingly, there is no legal basis provided for this claim and judgment will enter in favor of Greenfield in Count V.

As to Count VI, which seeks permanent injunctive relief against a property owned by a non-debtor, while the Court is dubious as to the likelihood of the Debtor's success on that count for the reasons set forth on the record upon denial of the request for preliminary injunctive relief, because Greenfield failed to address that count in its Summary Judgment Motion, the Court will deny summary judgment as to Count VI at this time.

Summary judgment must also be denied with regard to Greenfield's counterclaims. The counterclaims seeking "enforcement" of the promissory notes ask the Court to determine the amount of the claims against the Debtor, but the Court has insufficient evidence in the record as to the current amount due under the notes and the question of whether default interest has been appropriately applied to the first Note remains outstanding. Therefore, summary judgment as to those counts must be denied.

As to the third counterclaim, which seeks the avoidance of a transfer of another of the Debtor's properties to a third party as a fraudulent transfer, the Court must deny summary judgment. Greenfield asserts the fraudulent transfer claim only against the Debtor, as transferor, but has not brought a claim against the recipient of the transfer, as transferee. "A transferee that retains title to

or an interest in the property conveyed is a necessary party to the fraudulent transfer action . . . ." *Official Comm. of Unsecured Creditors v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 744 (Bankr. S.D.N.Y. 2008) (citations omitted). Accordingly, the Court will deny summary judgment as to that counterclaim and will issue a separate order to show cause as to why that claim should not be dismissed.

## IV. CONCLUSION

For all the foregoing reasons, the Summary Judgment Motion will be GRANTED IN PART AND DENIED IN PART. The motion will be denied with respect to Counts I-IV and VI and with respect to Greenfield's counterclaims. The motion will be granted with respect to Count V. A separate order and partial judgment in conformity with this Memorandum will issue forthwith.

DATED: October 14, 2026

By the Court,

Elizabeth D. Katz
United States Bankruptcy Judge